# United States District Court
# Western District of Michigan
# Southern Division

| | |
|---|---|
| JIM ENGLISH, | Case No. 1:23-cv-00562 |
| | Hon. Jane M. Beckering |
| Plaintiff, | Maj. Ray S. Kent |
| v. | |
| KALAMAZOO PUBLIC SCHOOLS;  KALAMAZOO PUBLIC SCHOOLS BOARD OF EDUCATION, MS. PATTI-SHOLLER-BARBER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;  MS. TIANNA HARRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;  MS. JENNIE HILL, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;  MR. JERMAIN JACKSON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;  MS. MEGAN MADDOCK, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;  MS. TANDY MOORE, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;  MR. KEN GRESCHAK, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;  MS. CINDY GREEN, IN HER INDIVIDUAL AND OFFICIAL CAPACITY. | |
| Defendants. | |

KALAMAZOO PUBLIC SCHOOLS,

    Counter-Plaintiff,

v.

JIM ENGLISH,

    Counter-Defendant.

___

| | |
|---|---|
| Eric D. Delaporte (P69673) | Craig R. Noland (P30717) |
| DELAPORTE LYNCH, PLLC | Bogomir Rajsic, III (P79191) |
| Attorney for Defendant | McGRAW MORRIS P.C. |
| 210 State St., Suite B | Attorneys for Defendants/Counter-Plaintiff |
| Mason, MI 48854 | 300 Ottawa Avenue, NW, Suite 820 |
| (517) 999-2626 | Grand Rapids, MI 49503 |
| eric@delaportelaw.com | (616) 288-3700/Fax (616) 214-7712 |
| | cnoland@mcgrawmorris.com |
| | brajsic@mcgrawmorris.com |

1

## ANSWER TO DEFENDANT KALAMAZOO PUBLIC SCHOOLS' COUNTER CLAIM

NOW COMES Plaintiff/Counter-Defendant Jim English by and through his attorney Eric Delaporte of Delaporte Lynch, PLLC, and files his Answer to Defendant/Counter-Plaintiff Kalamazoo Public Schools' Counter-Complaint as follows:

### JURISDICTION:

1. Kalamazoo Public Schools ("KPS") is a Michigan school district organized under the Michigan Revised School Code and has its principal place of operations in the City of Kalamazoo, County of Kalamazoo, State of Michigan, and is within the jurisdiction of this court.

   **ANSWER: Admitted.**

2. James English ("English") is an individual who resides in the City of Jenison, County of Ottawa, State of Michigan, which is within the jurisdiction of this court.

   **ANSWER: Admitted.**

3. English initiated this action in the Kalamazoo County Circuit Court, which was subsequently removed to this court, by filing claims against KPS and the other defendants alleging, among other theories, deprivation of his constitutional rights in violation of 42 U.S.C. § 1983, thus providing this court with federal-question jurisdiction.

   **ANSWER: Admitted.**

4. This court, therefore, has pendent jurisdiction over the counter claims set forth below.

   **ANSWER: Admitted.**

### GENERAL ALLEGATIONS

5. Defendant/Counter-Plaintiff incorporates prior allegations by reference.

   **ANSWER: Plaintiff/Counter-Defendant incorporates by reference their prior responses.**

6. Until his termination on December 28, 2022 for various acts of gross negligence, misfeasance and malfeasance in the course of his employment, English was employed by KPS as its Assistant Superintendent of Finance and Operations.

**ANSWER: Admit in part/Deny in part. Plaintiff/Counter-Defendant admits that his employment with KPS was terminated on December 28, 2022, but denies both the reason for termination and the title of Mr. English's employment with KPS. Plaintiff/Counter-Defendant's title was "Assistant Superintendent of Operations."**

7. English began his tenure as Assistant Superintendent of Finance and Operations at KPS in July 2021.

**ANSWER: Plaintiff/Counter-Defendant denies in whole. Mr. English began employment as Assistant Superintendent of Operations at KPS in June 2021.**

8. As Assistant of Finance and Operations at KPS, English served KPS in a capacity as the district's chief financial officer. In other words, he was responsible for the oversight of, among other things, KPS' accounting, accounts payable, and purchasing. This included ensuring the district's financial operations compiled with KPS Board of Education policies as well as state law.

**ANSWER: Denied in whole. The Director of Finance was responsible for oversight of KPS' finances, not Mr. English.**

9. English, in his role as Assistant Superintendent of Finance and Operations, was also regularly in contact with KPS' Board of Education, meeting regularly with the Board of Education's Operations Committee.

**ANSWER: Denied in whole. Mr. English did not meet regularly with the Board of Education's operating Committee nor did he have direct contact with the board.**

10. In his role as Assistant Superintendent of Finance and Operations, English was directly involved with the creation of and through approval of public funds, the funding of, an entity known as the Kalamazoo Public Schools Foundation (the "Foundation").

**ANSWER: Denied in whole. Mr. English was not directly involved in creating the Foundation nor did he approve funds without the Board's knowledge.**

11. Upon information and belief, English and other members of KPS' administration including former KPS Superintendent Rita Raichoudhuri, told individual KPS Board of Education members that the administration was working to establish the Foundation, which would be used to support KPS. However, the administration, including English, advised these individual board members that the Foundation would be entirely independent of KPS and that KPS would not be providing any financial support for the Foundation.

**ANSWER:  Denied in whole. Mr. English never communicated with the board about the Foundation. Nor was Mr. English involved in any meeting with the Board of Education regarding the Foundation.**

12. At most, a few members of KPS Board of Education were under the impression that the creation of the Foundation was being explored, but would be brought back to the Board of Education for approval before it was created.

**ANSWER: Plaintiff/Counter-Defendant lacks sufficient knowledge to form an answer, and thus, leaves Counter-Plaintiffs to their proofs.**

13. The KPS Board of Education, pursuant to its policies and procedures, expected that the district would not be funding the Foundation.

**ANSWER: Plaintiff/Counter-Defendant lacks sufficient knowledge to form an answer, and thus, leaves Counter-Plaintiffs to their proofs.**

14. Neither English, as the Assistant Superintendent of Finance and Operations, nor any other member of KPS' administrative team ever requested that the Board of Education authorize the creation of the foundation, nor was the Board of Education ever requested to authorize any financial support for the Foundation.

**ANSWER: Denied in whole. Mr. English believes that former Superintendent Ms. Rita Raichoudhuri requested authorization of the budget, though Mr. English was not present at the meeting. The budget included financial support for the Foundation, therefore Board was on notice of the Foundation's funding.**

15. Despite never obtaining Board of Education authority to create the Foundation, English and other members of KPS' administrative team moved forward with the creation of the Foundation in the summer of 2022.

**ANSWER:  Denied in whole.**

16. Upon information and belief, English knew the Board of Education had not approved the creation of the Foundation or the use of KPS funds in funding the Foundation.

**ANSWER: Denied in whole. Mr. English was under the reasonable impression that the board had approved the budgets inclusion of funds for the Foundation.**

17. English, as KPS' Assistant Superintendent of Finance and Operations, knew or should have known of the requirement to obtain Board of Education approval before moving forward with the creation of the Foundation and the use of KPS funds to pay for Foundation expenses.

**ANSWER: Denied in whole. The funds supporting the Foundation were included in the budget approved by the Board.**

5

18. Despite the Board of Education never being advised of the creation of the Foundation, the Foundation was slipped into KPS' 2022-23 budget as a $100,000 line item. Even then, the Foundation was not mentioned to the Board of Education in a June, 2022 budget presentation, nor was it included in a six-page summary provided to Board of Education members at the same meeting.

**ANSWER: Denied in whole. The Board was advised of the funds for the Foundation via their inclusion in the budget. Upon information and belief, Plaintiff/Counter-Defendant denies omission of the Foundation funds from the six-page summary provided to Board of Education members.**

19. Under English's direction and guidance, KPS paid $91,125.59 to individuals and organizations to support the Foundation, including the following, none of which were approved by the Board of Education:

   a. $76,000 to Dr. John Mosser, reportedly the President of the Foundation, for "philanthropic consulting services" over a period from August, 2022 through December, 2022; . . .

   b. $2,875 to James Pollerana for "consulting services" over a period from August, 2022 to December, 2022, . . . ;

   c. $216 to Sarah Bacon for "contract philanthropic services for work done in August, 2022, which was, upon information and belief, transcription services, . . . ;

   d. $3,367.92 to CDW Government, Inc., for three laptop computers and related equipment ordered in September, 2022; . . . ;

   e. $8,666.67 to Sleek Consulting, LLC for a "QSS Package 1st Down Payment" for a database implementation service; . . . ;

**ANSWER: Deny in part that the above was done under English's direction and guidance. For remaining allegations in paragraph 19, Plaintiff/Counter-Defendant lacks sufficient knowledge to form an answer, and thus, leaves Defendant/Counter-Plaintiff to their proofs.**

20. As KPS' Assistant Superintendent of Finance and Operations, English was aware that pursuant to Board Policy, the Board of Education must approve expenditures in excess of $25,000.

**ANSWER: Denied in whole. There is no such policy that Mr. English was aware of.**

21. Further, English's authorization of payments to Dr. Mosser violated state law, when English approved of a payment to Dr. Mosser for attendance at the "Discover Kalamazoo Golf Outing" on October 3, 2022. Such payment is expressly prohibited by Section 1814 of the Michigan Revised School Code, MCL 380.1814.

**ANSWER: Denied in whole. Plaintiff/Counter-Defendant denies any and all alleged violations of law, policy, practices, and rules.**

22. Even if the Superintendent approved the payments above, such authorization did not alter English's obligation and responsibility as KPS' Assistant Superintendent of Finance and Operations to ensure the payments were made in accordance with Board Policy and state law.

**ANSWER: Denied in whole. Plaintiff/Counter-Defendant denies any and all alleged violations of law, policy, practices, and rules.**

COUNT 1 – BREACH OF CONTRACTUAL DUTIES

23. Defendant/Counter-Plaintiff incorporates its prior allegations by reference.

**ANSWER: Plaintiff/Counter-Defendant incorporates by reference their prior responses.**

24. In his Complaint, English alleges he had an employment contract with KPS, or in the alternative, that he did not have a written contract, he had an implied contract with KPS under Michigan's Revised School Code. KPS disputes there was any written contract between KPS and English or that there is an implied contract created by the Revised School Code.

**ANSWER: Denied in whole.**

25. Nevertheless, there is no dispute that English was, until December 28, 2022, an employee of KPS.

**ANSWER: Admitted.**

26. As an employee of KPS, and in particular as its Assistant Superintendent of Finance and Operations, English owed KPS certain duties, including but not limited to, honestly, loyalty, restraint from acting in self-interest, and good faith.

**ANSWER: Admitted in part, denied in part.  While Mr. English believes in upholding the highest standards of his office, KPS maintained no such policy.**

27. English breached his duties to KPS by wrongfully utilizing and/or managing the financial wellbeing of KPS, for which he was the Assistant Superintendent of Finance and Operations, by, among other things, knowingly authorizing payments for the Foundation as described above that were in violation of Board of Education Policies and state law.

**ANSWER: Denied in whole. Plaintiff/Counter-Defendant denies authorization of any payments to the Foundation without the prior approval from either superintendent Rita Raichoudhuri or the Board of Education. Plaintiff/Counter-Defendant denies any and all alleged violations of law, policy, practices, and rules.**

28. As a result of English's breaches of is contractual duties, KPS suffered damages in the amount of $92,125.59.

**ANSWER: Denied in whole.**

## COUNT II - BREACH OF FIDUCIARY DUTIES

29. Defendant/Counter-Plaintiff incorporates its prior allegations by reference.

**ANSWER: Plaintiff/Counter-Defendant incorporates by reference their prior responses.**

30. As an employee of KPS, and more particularly serving in a high-ranking administrative position as KPS' assistant superintendent of Finance and Operations, English owed KPS fiduciary duties, including ensuring that KPS' financial operations were in compliance with Board of Education policies, Michigan state law, operating the district's financial processes with good faith, and loyalty.

**ANSWER: Plaintiff/Counter-Defendant admits only to holding the position of "Assistant Superintendent of Operations." Denied in part to English's financial responsibilities. Denied in part to any and all alleged violations of law, policy, practices, and rules.**

31. English breached his fiduciary duties to KPS by wrongfully utilizing and/or managing the financial wellbeing of KPS, for which he was the chief financial officer, by, among other things, knowingly authorizing payments for the Foundation as described above that were in violation of Board of Education Policies and state law, and which also breached his fiduciary duties of good faith and loyalty to KPS.

**ANSWER: Denied in whole. Plaintiff/Counter-Defendant did not authorize payments, nor did he violate any state law, policy, practice, or rule.**

32. As a result of English's breaches of his fiduciary duties, KPS suffered damages in the amount of $91,125.59.

**ANSWER: Denied in whole. Defendant/Counter-Plaintiff KPS suffered no damages.**

<u>**PLAINTIFF/COUNTER-DEFENDANT'S AFFIRMATIVE DEFENSES**</u>

NOW COMES Plaintiff/Counter-Defendant Jim English (hereinafter "English" or "Plaintiff/Counter-Defendent"), by and through his attorney Eric Delaporte of Delaporte Lynch, PLLC, and files his Affirmative Defenses as follows:

1. Defendant/Counter-Plaintiff's Counter-Complaint is further unlawful retaliation for Mr. English's whistleblowing activities. Defendant/Counter-Plaintiff's Counter-Complaint is in violation of the Whistleblower Protection Act.

2. Fraud;

3. Breach of Contract;

4. Unclean hands;

5. Estoppel;

6. Illegality;

7. Injury by fellow servant;

8. Contributory negligence;

9. Lack of fiduciary authority;

10. Waiver;

11. Failure to join a party under FRCP 19;

12. Plaintiff/Counter-Defendant reserves the right to such additional affirmative defenses as may become available during the course of discovery.

**\*\*Signature on following page.\*\***

DATED: July 11, 2023

                                      DELAPORTE LYNCH, PLLC

By: _____
       Eric D. Delaporte (P69673)
       210 State St., Suite B
       Mason, MI 48854
       (517) 999-2626
       Eric@DelaporteLaw.com

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. Rule 38, Plaintiff/Counter-Defendant Jim English requests that this count and all previous paragraphs incorporated herein be tried by a jury.

DATED: July 11, 2023

                                             DELAPORTE LYNCH, PLLC

                                    By: _____
                                            Eric D. Delaporte (P69673)
                                            210 State St., Suite B
                                            Mason, MI 48854
                                            (517) 999-2626
                                            Eric@DelaporteLaw.com